HEIRS OF CORTIJO Y ANDINO, Plaintiffs and Appellants, *v.* TOMÁS CRUZ, ETC., Defendant and Appellee.

No. 5165. Argued April 28, 1931.—Decided July 20, 1932.

*Dubón & Ochoteco* for appellants.　*García Méndez & García Méndez* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

This is a suit of revendication which involves the nullity of a partition deed made by Pedro Cortijo y Andino and the defendant in this case. The plaintiffs say that the defendant is Tomás Cruz, known as Tomás Cortijo. Ultimately the decision of this case in great part, if not entirely, depended and depends upon the question whether the defendant was a natural acknowledged child of Pascual Cortijo y Andino. The defendant himself is a great deal more positive and maintains that he is the natural recognized child of Pascual Cortijo. Pascual Cortijo was the son of María Matea Andino. The latter died on the 15th of November, 1912. She made a will wherein she named as her universal heirs in equal parts her son, Pedro Cortijo, and her grandson (*sic*) Tomás Cortijo, to whom belonged the right of representation. The court below held that Tomás, so named in the will, was the natural acknowledged child of Pascual Cortijo, and hence of course had the right to represent his father as the latter died unmarried and left no other heirs. The will of María Matea Andino is not directly attacked in this proceed-

ing, but the institution of heirs of the said Tomás Cortijo is. The theory of the plaintiffs is that the clause of the will naming him as the grandchild of the testatrix must be taken as inexistent because of the provisions of section 755 of the Civil Code which provides:

"The statement of a false reason for the designation of an heir or for the appointment of a legatee shall be considered as not written, unless it appears from the will that the testator would not have made such designation or legacy, had he had knowledge of the falsity of such reason.

"The statement of a reason contrary to law, even though true, shall also be considered as not written."

The court below held that this provision of law did not interfere with the institution of heirs and that, furthermore, a subsequent partition deed made between Pedro Cortijo, son of the testatrix, and the defendant, was a confirmation or ratification of the rights of said Tomás Cortijo, and an estoppel against the heirs of Pedro Cortijo, plaintiffs in this case.

The first assignment is that the court erred in saying that the defendant was a natural recognized child of Pascual Cortijo. It is conceded on all sides that the law applicable to the case of this supposed natural child is the eleventh law of Toro. The court cited jurisprudence of the Supreme Court of Spain to the effect that a natural child may acquire a status by the acts of the father if sufficiently proved, or of his family.

The proof in this case tended to show that at the time of the conception of Tomás, Pascual Cortijo and Francisca Cruz, mother of Tomás, were living together; that at the time of his birth they were living in the house of María Matea Andino and there Tomás was born; that at the time of his birth his alleged father, Pascual, had an attack of smallpox from which he died within twenty days or so; that Pascual was so ill that he had no opportunity to move, but nevertheless he asked his mother, the testatrix in this case, to take charge

of his child, Tomás. The said María Matea Andino in fact did take charge of the child on whom she evidently lavished affection. The said child lived with his alleged natural grandmother for about twenty years before she died. There was a good deal of evidence tending to show the right of Tomás Cruz to have brought a suit of filiation against his alleged father in his lifetime.

The appellants do not seriously question that Tomás might have brought this suit in the lifetime of his father, but they stress the point that he did not and that hence never acquired a status which would have given him any right to recognition by a court or by society. The appellants also maintain that an action accruing to the defendant would have prescribed at the time of the execution of the will and hence there was no possibility of his acquiring a status. Therefore, the plaintiffs allege that the will contained a false reason for the designation of Tomás as heir and that he was not such an heir.

The appellee maintains in effect that the appellants might be right if he were seeking to establish a status by suit, but that he has not begun any action for that purpose. He is the defendant in this case.

We are inclined to think with the court below that Pascual Cortijo in his lifetime acknowledged Tomás as his natural son. The direct and circumstantial evidence tends to prove this fact. While this conclusion would dispose of the case, we need not base our decision solely on this ground.

If, however, no such acknowledgment of Tomás Cruz arose, nevertheless, the unquestionable evidence is that he was the natural child of Pascual Cortijo and the natural grandchild of María Matea Andino. If he was such a natural grandchild, and even if he was not, María Matea Andino had a right to leave him the part of her estate that did not belong to the legitimate portion of her heir. Of course if he was not an acknowledged natural child, two-thirds of

the inheritance of María Matea Andino belonged to the plaintiffs as children of Pedro Cortijo, who died some time after the partition attacked in this case. The appellants maintain that section 755 would prevent the existence of the institution of heirs attempted to be set up by the will.

Recurring to section 755 of the Civil Code, we are of the opinion that a false cause in a clause of a will would not destroy the effect of that clause unless, as said in section 755, it appears from the will itself that the testator would not have made the legacy if he had known the falsity of the cause. In other words, the false cause is normally to be disregarded because it would be a rare case that the will did show that the testator would not have made the same disposition if he had known that the reason assigned therefor was false. What we say here is more or less the opinion of Manresa and other commentators, as may be seen by reference to 6 Manresa 101 and 13 Scaevola 383 *et seq.* Scaevola, however, has a different idea. He reasons more or less that the intention of the testator applies not only to the particular disposition or institution made but also to the cause and hence that the disposition would not have been made except for the false cause. Evidently the idea of this commentator is that the false cause could be proved *aliunde*. We find no reason, however, for varying from the terms of section 755 itself. To our mind, both the letter and the intention of the law are to the effect that the false expression makes no difference unless it clearly appears that the testator would not have made the particular disposition. We are inclined to agree with Ortolán, cited on page 383 of 13 Scaevola, when he says: "With respect to the indication of the reason (*causa*), that is to say, of the motive which could have induced or determined the testator to make a legacy, it is absolutely superfluous; the testator has not to give account to anybody of the reasons for acting one way or the other, and

it makes little difference that the reasons that he has expressed are false."

It is clear, as we have indicated before, that if the defendant had not been acknowledged or if the will itself was not an acknowledgment then the said María Matea Andino had no right to leave anybody more than one-third of her property, as two-thirds belonged to her forced heir, Pedro Cortijo, the father of the plaintiffs. However, what the testatrix attempted to do was to leave her natural grandchild one-half of her estate. While she could not leave one-half of her property she could leave him the part of free disposition, or one-third. So that we feel bound to hold that by this will at least one-third of the estate of María Matea Andino passed to her natural grandchild.

Having thus at least one-third interest in the estate, he and his natural uncle, Pedro Cortijo, could divide the property among themselves as they thought fit. Therefore, the partition deed between them was a perfectly valid one even though Pedro Cortijo took less than he would have been entitled to if no partition had been made. Under these conditions, section 1048 of the Civil Code, as follows, "A division made with a person who was believed to be an heir without being so shall be void," would have no application.

Furthermore, even if the defendant was not an heir under the will, nevertheless, we think he made no pretension of being anything that he was not. In *Arandes* v. *Báez*, 20 P.R.R. 364, we held that the words of section 1048 should be interpreted to mean a misrepresentation by a person of his actual personality or otherwise, as for example, when a person represented himself to be the child of another and in fact was not such a child. That case was followed by *Sucn. of Dávila et al.* v. *Sucn. of Maldonado et al.*, 26 P.R.R. 500.

The court below also held in effect that Pedro Cortijo, the father of the plaintiffs, made this partition deed voluntarily with Tomás. The evidence, circumstantial and direct,

tended to show that Pedro Cortijo knew all the facts. It was not through a mistake of fact that he signed the deed of partition with Tomás but solely one of law, if any. The court decided that his heirs would be estopped from questioning his acts, and cited *Martínez et al.* v. *Registrar of Arecibo,* 27 P.R.R. 768. We prefer to base our decision on the foregoing considerations rather than on this point of view, but the holding of the court below is not without merit.

The judgment will be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.